in the Municipal Corporation for the Tenement and Relief. On behalf of the Tenement and Relief, Mr. Thomas W. Gooch III. On behalf of the Tenement and Relief, Mr. James P. Gallagher. Good morning. We come before you arguing in essence that when a village issues a building permit, there's a contractual relationship between the applicant and the village. We pled originally a written contract based on the application for a building permit. The trial court did not like that idea and put an oral contract with them. Unfortunately, the same results. But we maintain that when a village takes somebody's money and says they can build a house, that's created the offer and the acceptance. The consideration is the fee paid. And even a village the size of Holiday Hills should know the procedures. How is payment of a fee consideration? What benefit did the village receive other than covering the expenses of issuing a permit? Which is traditionally what a fee is for, correct? The fee pays for government services? Yes. Yes, I can't disagree with that. But whether or not it creates a surplus in that fee, I don't know. But they collect tax money to provide services. That fee is something over and above that. Well, that's in essence this governmental function is part of the police power here and not part of a private contractual arrangement. Isn't that correct? It's part of their police powers to regulate building and zoning, yes. That's correct. And so as part of regulating the construction and use of buildings for public safety, this fee is charged to those who want a building permit. Over and above taxes that that same person pays for their property within the village. You can make the argument that the taxes being paid should provide those services.  I'm sorry, ma'am? You said should provide those services. Which services? Building services. You're not saying tax money doesn't cover the fee. There's a separate fee that the municipality charges if someone wants to erect a building. Yes. But by the same token, that same person is paying money in other ways to the village for services from the village. Right, but that has nothing to do with this fee and building a building. I'm not sure, and I really don't understand why there should even be a fee for the issues of building permits when the people are taxpayers anyway within the village. Well, that's not the issue before us. I'm sorry. Historically, projects that are completed after a village or a town or a city are incorporated. That's in addition to what the taxpayers, what taxes pay for. It's the same thing in state government, federal government. This is a fee that has to be paid in order to acquire a permit to construct a new structure. And beyond that, what authority did this inspector have to bind the village? He had evidently in Holiday Hill, he had apparent authority because there was no one else around. Apparent authority requires that the person who's relying upon that authority acts reasonably. So your position is that people who own property are excused from doing their own independent research as to what is required before they construct a building? I think part of that research is asking the building authority, the inspector, what they have to do. But when the inspector says to them, we're a certified community. All you need to do is give us a trust load analysis, and you can build your boulevard, that same person should know that no, they have to go to McHenry County and get stormwater. Well, he's not employed by McHenry County. Even if he had apparent authority for Holiday Hills, how would he be responsible for the requirements of McHenry County? He's not employed by them. Except that he told them that they could go ahead and build. He should have known that they couldn't go ahead and build. As a fact... Well, did he have a duty to know? It sounds more like your complaint sounds in negligence, that he was negligent for not knowing that an additional permit was required from the county. That's the argument that I believe. That's what it sounds like here. You just said it. Here. You know, the closest analogy I can think of is a legal malpractice case, which is pled and contract. But there's a breach of a duty that violates a contract. This, to me, is the same set of circumstances. When he tells somebody, here's your building permit, you can go ahead and build, and you can't, then he should know that. The village should know that. The first step before you even get the building permit should be to satisfy the site development requirements. And because some villages can do that, can issue stormwater permits and site development permits, but Holiday Hills was not one of them. So it's incumbent for somebody who has the authority to issue a building permit to know whether or not it's valid. And in McHenry County, it's not like it's a gigantic metropolis. I mean, a small village in McHenry County should recognize that they cannot issue a building permit until there's been compliance with the site development. Well, but unless there's a contractual relationship, I mean, we're back to the issue of, you know, are the elements of a contract here and where's the consideration, how would that inure to your client's benefit? I'm sorry, ma'am, I don't understand. In other words, you said he had a duty to disclose. I mean, unless we're talking about the Consumer Fraud Act in your second argument, we're back to the contractual argument. There's no independent duty to disclose. No, not without a contract. Right. So then where are the elements of the contract? And we're back again to, in my mind, the issue of consideration. And charging a fee can't be consideration unless you have some other authority that would support that. I remember some over 40 years ago suffering through Contract 1, the very issue of offer, acceptance, consideration. I also remember learning that virtually anything can be considered consideration, a more modern approach to Contract 1. I remember that very distinctly, that anything can be consideration. So I don't know of any reason why that application fee for a building permit is not consideration. I mean, you pay some money, you get the permit. In this case, the breach occurred because the permit was no good. Anything may be consideration, but the discharge of a duty one is already bound to do is not consideration. You'd agree with that, correct? Discharge of a duty that you're bound to do is a consideration? Yes, I'd agree with that. Have you found any cases, either in Illinois or anywhere else, that the issuance of a building permit creates a contractual relationship? No, sir. I mean, I found several cases outside of Illinois that it doesn't create a relationship. We did not go outside of Illinois in our research. When there's no authority on point in Illinois, it's permissible to look at foreign jurisdictions. Yes, sir. I mean, the case, the kind of lead case from Texas is the Stravino v. Gonzalez Company. It talks about the fact when a building permit is issued, none of the elements of the contract are present. There is no offer, no acceptance, no consideration. A building permit is simply irrevocable and alterable license authorizing construction. Is that what it says? Well, that's consistent with what we've been asking, a fee for a – It's not consideration? It's not consideration. I understand that. I understand that that's your position. I can't find any other consideration other than that fee in the fact pattern of this case. But I think when you collect money and don't do your job, it should be considered a consideration. And I certainly – Go ahead. No, I'm going to move on to – Well, that's what I was going to do, too. As to the application of the Illinois Consumer Fraud and Deceptive Business Practices Act, how was the village engaged in trade or commerce here under that statute? And, I mean, isn't trade or commerce the advertising for sale or distribution of any services in any property? I mean, what did the village offer for sale here? Well, they offered their services in the permitting of that building. And the purported inspection during the course of construction, I think that brings it into commerce and services. Well, they didn't really sell the building permit. They collected a fee for it. I guess I look upon that as kind of the same, that when they collect the fee, you don't get the services without paying the fee, although I think you should. So I think that, yes, it is a service contemplated by the Act. And I agree with you, it's certainly unusual to go after a village in the Consumer Deceptive Practice Act, but there's no one who really hurt these people. Well, how about the statute of limitations argument on the Consumer Fraud Act? I think the discovery rule applies to it. And I don't think they had any idea until McHenry County appeared. And the cause of action really wasn't completed until they were damaged, and they weren't damaged until McHenry County fined them and caused them to spend money on other professions. And when was that? March 6th of 13, right? Of 13, yes. And then they filed their lawsuit May 3rd of 16. It was over three years. Right. But I'm not sure that they knew the extent of the violation. The county had sued them on March 6th of 13. They filed a lawsuit against them. They probably knew something was going on there at that point. But I don't think they knew at that point that what was going on was a direct result of the wrongful conduct of the village. And I think that knowledge is a factual question. You know, the three-year statute, the issue raised in the motion dismissed was the Tort Immunity Act statute limitations. We can affirm on any basis supported by the record. I'm sorry, sir? We can affirm on any basis supported by the record. I'm just pointing out that the process of the motion that the court considered was the Tort Immunity Act and the one-year statute of limitations. If there's a three-year statute of limitations, I think it's a factual question, and I need to go back for a determination on that. What about the contractual statute of limitations? Five years under the oral contract. Right. Five years under written. Again, I think, A, it wasn't raised in the trial court. B, I think it was discovered multiple times. And if it does, that certainly brings it within the statute. That's a five-year statute of oral contract. And you're saying it's an oral contract, not a written contract? Well, I mean, you wrote in your brief it was a written contract. Yes. And that was your theory in your amended complaint. Yeah. We went from written contract to an oral contract. Okay. You can wrap up. Anything else? No, Your Honor. Thank you. You'll have time in rebuttal. Mr. Pelt. Excuse me. Good morning, Justices. May it please the Court, I'm James Kelly. I'm the captain of the village of Palo Alto Hills. The essence of our argument is that there is no contract with the village. And we've cited various laws. I heard the Court talk about previously there is no case law in Illinois. I contrary to that, there is a case law, and it is attached to Mr. Boucher's brief. It was cited in the motion, dismissed, and it's called Village of Schomburg v. Kingsport. In that case, it essentially held that a building permit is more analogous to a license. It's not a contract. Therefore, it's simply just not a contract. It's a license that they give. Further, a building permit is a mandatory requirement of the village. The village passed an ordinance. If you're a resident of that village and you come to the village and you ask for a building permit, you have to pay for the fee. The payment of a fee in the case of a building permit is not consideration. It's a mandatory requirement for anyone that lives in the village that wants to build a building. Whether the plaintiffs in this case argue that it's an oral argument or a written argument, that's irrelevant. It's just not a contract. Well, but if we look at the Steinberg case, I mean, didn't the inspector invite the plaintiffs, just like in Steinberg, which was involved in an educational institution, but didn't the inspector here in essence invite the plaintiffs to make an offer to build a pole barn with a when they tendered the application and the fee? The building inspector made no offer. The plaintiffs in this case, knowing that they live in a village, went to the village and asked how to proceed, and here's the ordinance. You have to obtain a building permit to tell us what you're doing. The building inspector then provided input of some type. We don't know exactly what it was. Just the allegations which were taken as true from the complaint, that they needed to provide a schematic dealing with this truss load, some type of engineering document, to certify with building code for the village. I don't know. That's kind of off, right? Well, when the plaintiffs built this pole barn with the truss load, I mean, wasn't that a detriment to them, and therefore couldn't we think of that as consideration? Separate and apart from the fee, you mean? Right. No, I think they are merely complying with the village's ordinance. That's not consideration. They have to comply with the village ordinance. It's not something that we're paying. This is not a bargain for a deal. This is, we have the building code. We have to comply with it. I mean, that's the. . . So you're saying it's an ordinance, not a private contract. Correct. It's a requirement. It's a permit which is issued, and the end result is that the building inspector goes out and inspects the building to ensure that it complies with the code. And the fee is essentially to keep the cost of the building for sending that building inspector out to ensure that compliance is met. Anyway, our simple argument is that there's no contract, and that further, if the building inspector did not have the authority to enter into any other contract in any way, shape, or form, it's merely a building inspector that issues permits that are compliant with the code. And that's some substance of the argument concerning the contract. There's just no authority, period, and it's got to be expressed by the village. That didn't happen. The case law is quite clear on that to include the PAPR case cited by the appellant in this case. You've got to have express authority from the village to enter into a contract, and the building inspector cannot have that authority. The trial court found there was at least a question of apparent authority. Judge Meyer did question that. However, in McMahon, which is a city of Chicago case, it's quite clear that, and in Patrick, and in other cases, that when you contract, in Mulvey, I believe, was the other case, when you as a private person or a person contract with a municipality, the burden shifts to you as the person contracting with the municipality or the government. You assume the risk that the person you're dealing with has authority to enter into the agreement, and you have the risk of, you have the duty, the way I read the case, is to actually conduct an investigation to determine that there is authority by that person to enter into that agreement. In this case, it was a simple issuance of a building permit. The builder, the contractor, the owner needed to know what his duties were. He knew he had to get a building permit. He apparently didn't know he needed a permit from the Henry County Swim Water Project. Well, speaking of duty, what, if any, duty does the inspector have to disclose to a homeowner all the steps necessary to build? Legally, I believe not. You know, as a practical matter, Your Honor, I think that every municipality, the building inspectors say, well, you need to go do these things. Look at our ordinance. Look at this building code, and they'll point them in that direction. But I don't believe there's a legal duty. I mean, do anything except to say, you need to submit a permit. It needs to be in compliance with our ordinances. We have some very nice people that work in zoning and building and some very rude ones. It depends on the village, right? Sometimes they'll say, hey, it's not good enough, and give it back. Other times they'll say, hey, you need to do X, Y, Z. For 20 years, I've worked for governments. You've seen them all, right? So, yes, that is absolutely correct. I can't deny that. But I don't think the duty extends beyond directing what the ordinance is. In the county, for example, they'll provide information. Here's our ordinance. And there are some inspectors that may say, you know, here's the next step. But I don't think they have any other duty that provides a permit we're going to approve or deny. I was going to ask, why aren't the plaintiffs consumers here, if we move to the second argument? The plaintiffs are not. What are they buying? They're not buying anything. They're complying with a mandatory requirement. They cannot obtain a building permit to build. They must pay that permit fee. They're not a consumer. The village isn't suing, selling anything. They're requiring the plaintiffs to come to them. It's the residents of the village, the properties in the village. If a consumer didn't like the deal that the village of Holiday Hills was giving them, they can't go buy a building permit from the village of Barrington Hills. They're required. They're just not out purchasing things. Further, the village itself isn't in a trade or isn't selling things. They're not in that trade. There is no trade. What about providing services? Pardon? What about providing those services? It says either trade or services. They're not providing service. There's a building permit that's required. Didn't the Mosiers rely to their detriment on this building inspector's information? Well, the only thing we know is what's in the complaint at this point. According to the complaint, they allegedly did. However, they may have relied on it, but they still had the duty under the cases I cited in our brief to go out and determine if that building inspector had the authority to make those representations, and he did not. But along with the Consumer Fraud and Subject Practices Act, it's clear from the case was brought, account two of the complaint was brought under that act, and the statute of limitations is very clear. It's three years to bring it, and the lawsuit against Mosiers was brought three years before the complaint against the village was brought. And before that, the county, I think you can intuit that there was interaction between Mosiers and the county before the lawsuit was brought. I think you can read that into the complaint. And although we didn't talk about it, there were some attachments to the first motion to dismiss. I believe that showed some communications. But the three-year statute was clearly passed. When the lawsuit was brought, they knew that they did something wrong. Well, but counsel argues that it's still a factual question because they didn't know exactly what was wrong or what they needed to do. How do you respond to his argument? I think the facts are clear. When you're sued, you know that there's an issue. So the date of the lawsuit is dispositive of that factual question? Yes. I mean, the county most likely served them with letters prior to that, but that's by U.S. mail. I mean, I can't definitively say that the county, we haven't gotten that far of a case, sent them a letter on this date. I mean, the county usually sends, in my experience, several letters. But there's no assurance that that got to them. But we do know they were served with a lawsuit. The lawsuit was filed. That put them on notice. Yes, that put them on notice. No further facts were necessary. Correct. Judge, that's my argument. The statute of limitations as to the contract count, I mean, they would have known, as you said, on March 6th of 2013. So that would have been the discovery date for that, and they filed May 3rd of 2016 within five years. Yes. So, I mean, they would have met the – If there's a contract and we're disputing – I understand that. There's a five- and ten-year statute. The first complaint was a written contract. The allegation was a second complaint. It's oral, so it's a five-year statute according to the court's own procedure. Thank you. Thank you very much. Thank you. Mr. Gucci, vote. Vote. The duty, the real duty, it wasn't – I have no problem with saying, well, the plaintiff should have gone and determined independently in an investigation that the fellow who had been assigned the building permit had the authority to sign it. I mean, the building permit's attached to the complaint. Anyone would assume that he has the authority to do it. But the real duty, the real omission, was the building inspector issuing the permit. It never should have been issued. Because I think everybody agrees the first step is to get the site development permit. That inspector didn't know that he didn't have the authority to issue the site development permit, that only McHenry County did, because the village had not complied with the Starmont water laws. And certainly, if he's going to hold the office of a building inspector and have the authority to issue building permits, he's the one who should know what he needs to have before he issues them. And how can you possibly excuse somebody who doesn't say to a homeowner, well, you've got to go to the county first. I can't give you a permit until you've got the permit you need from the county. That's the way it works. And what he did is just wrong. And as far as the three-year statute on consumer fraud, simply because you get a lawsuit doesn't tell you that the village was to blame. I mean, that gets developed later on, and those are the factual questions. But no village should operate like this. Local government is supposed to be helping the citizens, not hurting them. Well, the issue is when you're put on notice that you have a potential claim. I mean, what would develop after that? I mean, you knew you built your building in reliance on this building permit, and then you knew you were being sued because it shouldn't have been built. What more would you need to know? The suit was for failure to comply with stormwater, the site development requirements of McHenry County. But the village had told them that they had complied. So simply because the county comes in and sues them doesn't necessarily put them on notice that they have a cause of action against the village. The cause of action wasn't complete anyway. They hadn't suffered an injury. Well, they're on notice of the injury, though. They're on notice that the county is taking action. Yes. I can't dispute that, but I don't think it's sufficient. Your argument is that's not sufficient, that's not enough. There are more facts to develop. They ought to be given the opportunity. Thank you. I'm happy to see the formal arguments. You may not be, but I am. Thank you. We thank both parties for the quality of your arguments this morning. The case will be taken under advisement. A written decision will be issued in due course. The Court stands in recess.